The Chancellor.
When the plaintiff purchased his two lots of Vanderheyden, the residue of the real estate of F. was, in equity, first chargeable with the burden of payment of the prior judgment of Kimberly. If the owner of the judgment had attempted to enforce it against the two lots of the plaintiff, he would undoubtedly have been directed by this Court, upon due application, to have levied the judgment debt upon the lands remaining unsold by V., -because it was the proper debt of F., and he ought to pay it/ The creditor would have been entitled, in equity, to have resorted tti *240 the lots of the plaintiff, only in the event of the property remaining with V. not being sufficient to satisfy the judgment; and he would have been entitled to that resort only to the extent 0f tf,e debt remaining unpaid, after the estate of V. had been exhausted. So, if V. had died seized of the residue of his real estate remaining unsold after the sale to the plaintiff, his heirs would have been bound to have discharged that judgment to the extent of the assets descended, and they would not have been entitled to any contribution from the plaintiff, seeing that there was no equality of right between them, in respect to that judgment debt. It would have been the exclusive duty of the heirs, to the extent of the assets, t0 have paid the judgment, and to have kept the plaintiff harmless, who was a bona fide purchaser from their ancestor, for a valuable consideration, and with covenants of warranty, jf there were several heirs, and the estate of V. had J 7 been divided among them, and the judgment creditor had ° v 0 collected the debt from the portion of the inheritance allot- * ted to one of them, such heir would have been entitled to contribution from his co-heirs, because the heirs would all have stood in cequali jure, in respect to the duty ofdischarging that debt; but he would not have been entitled to contribution from any other source.
A judgment enforce his gaflst the land jiurchaser, as other hud of the fnlvsnffidentto mentí ^¿“cañ land sold” only mains^unpaid of the dhev estate °f the debtor is exhausted.
Heirs who pay offthejudgment debt of their aneestor, are not entitled to demand contnbu.. tion of a^purland, subject to the judgment.
But if the portion of one heirhas been taken of the ancestor, contribution from his cohoirs.
These principles of equity are clearly laid down in Sir Wrn. Harbert’s case, (3 Coke, 11. b.) where it was resolved, that if A. be seized of three acres, and acknowledge a recognizance or statute, and enfeoff A. of one acre, B. of another acre, and the third acre descends to his heir, and if execution be sued out against the heir, he shall not have contribution against the purchasers, “ for the heir sits in the seat of his ancestorand the rule is the same though the purchaser take the land without a valuable consideration, and though the heir be charged as tertenant. (Vide Harvey v. Woodhouse, 1731. Select Cas. in Ch. 3, 4. S. P.) It was also held in the same case, that the land of the conusor in a recognizance was exclusively to be charged, when di *241 yers persons have purchased any of the land subject to the recognizance, because the purchaser does not stand in the same degree with the conusor himself; but where there are several heirs, or where several persons join in a recognizance, one heir, or one conusor, should not be charged exclusively, for their relations and duties were equal, and the charge should be equal.
It seems that there is no contribution between purchasers in succession at different times, of different parts of the estate of a judgment debtor.
This case settles the question of contribution as between the vendor and the purchaser, or the heirs of the vendor and the purchaser; and if there be several purchasers in succession, <at different times, I apprehend that in that case, also, there is no equality, and no contribution as between these purchasers. Thus, for instance, if there be a judgment against a person owning at the time three acres of land, and he sells one acre to. A., the two remaining acres are first chargeable in equity with the payment of the judgment debt, as we have already seen, whether the land be in the hands of the debtor himself or of his heirs. If he sells another acre to B. the remaining acre is then chargeable, in the first instance, with the debt, as against B. as well as against A.; and if it should prove insufficient, then the acre sold to B. ought to supply the deficiency, in preference to the acre sold to A.because when B. purchased, he took his land chargeable with the debt in the hands of the debtor, in preference to the land already sold to A. In this respect, we may say of him, as is said of the heir, he sits in the seat of his grantor, and must take the land with all its equitable burdens;. it cannot be in the power of the debtor, by the act of assigning or selling his remaining land, to throw the burden of the judgment, or a rateable part of it, back upon A. It is to be observed, that the debt, in this case, is the personal obligation of the debtor, and that the' charge on the land is only by way of security ; the case is not analogous to a rent charge, which grows out of the land itself, and where every purchaser of distinct parcels of a tract of land charged with the rent, takes it with such a proportionable part of the *242 charge. The owners of the land, in that case, all stand equal, and if the whole rent be levied upon one, he shall be eased in equity, by a contribution from the rest of the purciiaser^ because of the equality of right between them. (1 Eq. Cas. Abr. tit. Contribution, 4.1.)
The case of Gill v. Lyon, (1 Johns. Ch. Rep. 447.) was decided upon the principles here laid down. A mortgagor sold part of the mortgaged premises to Lyon, for a valuable consideration, and then the residue was sold under subsequent judgments and executions, and it was held that the mortgage was first to be satisfied out of the lands purchased under the judgments, and that Lyon was not bound in equity to bear any proportion of the mortgage debt, unless the residue of the mortgaged premises should not be sufficient to satisfy it. The subsequent purchaser, under the judgments, took only such right as the mortgagor had in the remainder of the mortgaged premises; and the mortgagor was bound to apply the land he had retained, to discharge the-mortgage debt, and not to suffer the. debt to fall upon the portion of land he had sold $ and in so discharging the mortgage debt, he would have no right of contribution against his own vendee. The purchaser under him, or under a subsequent judgment, by him suffered or confessed, could not be in any better situation, as it respected the prior purchaser.
To this effect was the observation of Coke and of Hobart, in Fleetwood and Aston's Case, [Hob. 45.) that as against his own conveyance, the conusee of a statute cannot require contribution.
In the present case, there was no right of contribution existing as between the parties to this suit. The judgment of Kimberly was chargeable upon the remaining property of Vanderheyden, purchased by the defendant D., for the benefit of himself and the other three defendants, in May, 1812 j and that property was, in equity, to be first applied to discharge it. When Kimberly’s judgment was about to be enforced in February, 1813, against the two lots of the plain *243 tiff, there can be no doubt that the plaintiff might, by application to this Court, have had that sale stayed, and have turned the defendants, as owners of that judgment, upon the other lands of V~. which had been sold under a junior judgment. If these lands had been insufficient, then, indeed, the lots purchased by the plaintiff would have had to supply the deficiency. But if the other lands had been competent, (and of which no doubt can be entertained from the case,) neither V., nor his heirs, nor his assignee or vendee, could, as owner of these lands, have had a claim upon the plaintiff for contribution. And there would have been the less colour of equity for such a claim, seeing that the sheriff’s sale of these remaining lands of V. was expressly made subject to all prior incumbrances. This monition, given at the sale, removes all pretence for surprise or hardship in the case, for the purchasers took with full knowledge of the prior unsatisfied judgment of Kimberly.
But the purchasers under that sale have since acquired the ownership of Kimberly’s judgment, and wielded it with a very inequitable hand. They have, by execution under it, sold the lots of the plaintiff, and purchased them in for their common benefit.
As owners of Kimberly’s judgment, they have sold the lots of the plaintiff in part satisfaction of it, whereas it ought, in justice and equity, to have been entirely and exclusively satisfied out of the residue of the property of K., of which the defendants were themselves the subsequent purchasers. The only question, then, in the case is, as to the proper relief, or indemnity to be afforded to the. plaintiff. I do not think it would be expedient to direct a, reconveyance of the lots. The sale was made in 1813, and the plaintiff waited four years, before he filed his bill, and the defendants have made expensive improvements on the lots, and agreed to sell one of them to the widow of V. and she has been some years in possession under that agreement. It is likewise stated, in the bill, that an application on the ..part of the plaintiff was made to the defendant D.¡ previ *244 ous to the sale of the lots, for some arrangement Concerning a rateable discharge by each party of Kimberly's judgment, and that the proposition was rejected previous to the sale. There was no fraud in the sale, and the legal title passed by it. Under all these circumstances of notice, delay, and change of the property, I am not required, by any established principles of the Court, to disturb the title under the sale. It would be still more advisable, not to do it, if we may give credit to an averment in the answer, (and upon which the proof is silent,) that Lemuel Hawley attended at the sale find yjbid as agent for Hiram Clowes, the uncle of the plaintiff, and the beneficial owner.
If a judgment creditor proceeds to sell land sold to a subsequentpurehaser, when there is other land of the deb* tor, sufficient to satisfy the judgment, the court will interfere and stop the bale.
But if the subsequent purchaser knows of the sale of his land, and neglects to apply to the Court, jn due season, the sale under the execution will not be disturbed ; but the judgment creditor must, by way of indemnity, pay him, at least, the amoünt for which his land was sold.
The lots were purchased by the defendants for 650 dollars ; and the plaintiff has been obliged to contribute that sum towards the satisfaction of Kimberly'1 s judgment, when he ought not to have contributed any thing, and that sum, at least, with interest, ought to be refunded. The 650 dollars may not be considered as an adequate price for the lots, for the defendant says, they were worth, when he purchased the residuary estate of Vanderheyden, in 1812, the sum of 1200 dollars; but this was to be taken with the condition that the title to them was clear and perfect. The certainty of an unincumbered title is not established; and.it appears by the certificates of the clerks, that there were two mortgages, and several judgments, which existed prior to the deed to the plaintiff, and were liens upon those lots. The plaintiff has no just cause to complain, if the sale, in this case, be taken as the value, inasmuch as he did not interpose effectually, (as he might have done,) before the sale, to stay it, and the agent oí Hiram Clowes, said to be the beneficial owner, did actually attend the sale, and bid a price, inferior to that bid by the defendant D. This agent is the person who possessed all the right and interest of the plaintiff to the lots, under a quit-claim deed of the 22d of July, 1813, and held the same until the conveyance was vacated as to the two lots in *245 question, by a decree entered by consent, the 9th of December, 1816.
Re-hearing «5 tothe damages.
I shall accordingly declare, that the judgment debt of John Kimberly, in the pleadings mentioned, was, in equity, chargeable upon the real estate of Jacob J, Vanderhey den, not conveyed to the plaintiff by the deed of the 10th of September, 1810, and ought to have been collected exclusively out of that estate, whether in the hands of the said Jacob, or of his heirs, or assignees, or purchasers under him, or under title derived from him, subsequent to the 10th day of September, 1810, and that the lots in the pleadings mentioned' as being conveyed to the plaintiff, ought not in equity to have been contributory to the payment of that judgment debt, except so far as that real estate should have been found insufficient for the purpose. And that the sale of the plaintiff’s lots, on the 12th of March, 1813, as in the pleadings and proofs mentioned, by the owners of the said judgment, in order to satisfy the same, in exemption of the said real estate, was contrary to the principles of equity, and the plaintiff is entitled to have the amount of such sale (and which, under the special circumstances disclosed in the pleadings and proofs, is assumed, as between these parties, to have been the then value of the lots,) refunded, with interest. It is, thereupon, ordered, 8zc. that the defendants, (except C. V. as to whom the bill is dismissed with costs,) pay to the plaintiff, in thirty days after due notice of this decree, 650 dollars, with interest from the 13th of March, 1813, and the costsof this suit to be taxed.
July 5. This cause was brought to a rehearing by con- , , ° J sent, on the question as to the damages. .
The Chancellor.
The plaintiff contends, that there ought to be an inquiry as to the actual value of the lots, at the time of the purchase by the defendants, and that the price bid by the defendants ought not to be assumed as the test of value. But, under the circumstances of the case, I do not *246 think that the decree ought to be altered on this point. The deed to the plaintiff was executed to him, while, as the deed expresses it, he was “ a student in Union College and the reason of the- quit-claim deed from him to Lemuel Hawley, in July, 1813, and then of the decree entered by consent, in December, 1816, that the deed should be cancelled only so far as respected these two lots, is not accompanied with any explanation by proof. The answers state, that the deed to the plaintiff from J. /. V., was given at the instance, and for the benefit of Hiram Clowes ; and that Lemuel Hawley, as the agent of H. C., attended at the sale of these two lots, and bid. The circumstances of the case lead to the inference and belief, that the plaintiff was, originally, only a dramatis persona, and that his name was used as a cover for interests not his own; and that when L. H. attended at the sale, he attended as the representative of the owner, whoever that owner might be.
The sale was in March, 1813, and the plaintiff is presumed to have known of the sale, and of the agency of Hawley ; yet he afterwards voluntarily made a conveyance of the property to him. I have no evidence that the conveyance was unduly obtained, for it was afterwards rescind-. ed by agreement, and then only in part. The notice given by the plaintiff to the defendants, that he intended to question their title, was after the conveyance to Hawley, and was, therefore, of no avail. The plaintiff might have stayed the sale before it was made. He waived that, and instead of seeking relief promptly upon the sale, he afterwards Conveyed his equitable title to Hawley, and waited until 1817, before he commenced this suit. Under these circumstances^ the title ought not to be disturbed, nor the improvements affected ; and as incumbrances are, shown to have existed on the lot, and are left without explanation, the plaintiff ought to be confined to the price which the defendants gave, and which Hawley was not willing to give.
*247 The plaintiff again contends, that as the late wife, now the widow of J. I. V. joined in the deed to him, and thereby barred her right of dower, lie is entitled to the value of her dower accruing at her husband’s death. But I do not apprehend that he could bring any action at law or in equity, for that dower. There is no such action in the books; and her joining in the deed was only a release or bar of her future contingent interest. It was not the alienation of a real, subsisting interest, which can now be the subject of computation or recognition. He took the lots discharged of that claim; and he has no right or interest which can be set up, as distinct from the title to the fee. The right was extinguished and gone forever by the deed, and the title to the lots, in whomsoever it now resides, is held free and discharged from that claim.
The decree, therefore, of the 7th of May last, is, in every respect, confirmed.